UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ANTHONY JEROME DONSON,

      Petitioner,

v.                                    Case No.  3:13cv159/MCR/CJK

JULIE L. JONES,[1]

      Respondent.

_____/

## ORDER and
## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 12).  Petitioner replied.  (Doc. 20).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that

---

[1]Julie  L. Jones succeeded Michael D. Crews as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed. R. Civ. P. 25(d).

the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Arrested June 24, 2009, petitioner was charged by Information filed in Escambia County Circuit Court Case No. 09-CF-2930, with knowingly selling, manufacturing, or delivering, or possessing with the intent to sell, manufacture, or deliver, cocaine in violation of Fla. Stat. § 893.13(1)(a).  (Doc. 12, Exs. A, B).[2] Petitioner went to trial (Ex. C), and a jury found him guilty as charged.  (Ex. C, p. 200; Ex. F).  By judgment rendered January 29, 2010, petitioner was adjudicated guilty and sentenced to fifteen years imprisonment.  (Exs. F, G).  Petitioner's judgment of conviction was affirmed on direct appeal, per curiam and without a written opinion, on April 26, 2011.  *Donson v. State*, 63 So. 3d 753 (Fla. 1st DCA 2011) (Table) (copy at Ex. L).

On September 28, 2011, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. N).  The state circuit court summarily denied relief without an evidentiary hearing.  (Ex. O).  The Florida First District Court of Appeal ("First DCA") per curiam affirmed with a written opinion.  *Donson v. State*, 99 So. 3d 999 (Fla. 1st DCA 2012) (copy at Ex. S).  The mandate issued November 27, 2012.  (Ex. S).

On April 4, 2012, petitioner filed a *pro se* motion to correct illegal sentence under Florida Rule of Criminal Procedure 3.800(a).  (Ex. T).  The state circuit court denied the motion on April 16, 2012.  (Ex. U).  The First DCA affirmed, per curiam and without a written opinion, on July 31, 2012.  *Donson v. State*, 94 So. 3d 585 (Fla.

---

[2]All references to exhibits are to those provided at Doc. 12, unless otherwise noted.  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

1st DCA 2012) (Table) (copy at Ex. X).  The mandate issued August 28, 2012.  (Ex. X).

Petitioner filed his federal habeas petition in this court on April 6, 2013.  (Doc. 1).  The petition raises four claims.  Respondent asserts that each claim fails for one or more of the following reasons:  (1) the claim is procedurally defaulted; (2) the claim presents a state law issue not cognizable on federal habeas review; (3) the state courts' rejection of the claim was not contrary to or an unreasonable application of clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 12, pp. 8-44).

## APPLICABLE LEGAL STANDARDS

Claims Cognizable on Federal Habeas Review

Federal habeas relief is available to correct only constitutional injury.  28 U.S.C. § 2254(a); *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (internal quotations and citations omitted)); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed. 2d 385 (1991) (holding that errors that do not infringe upon a defendant's constitutional rights provide no basis for federal habeas corpus relief; "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Tejada v. Dugger*, 941 F.2d 1551, 1560 (11th Cir. 1991) ("Questions of state law [and procedure] rarely raise issues of federal constitutional significance, because '[a] state's interpretation of its own laws provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.'") (*quoting Carrizales v. Wainwright*, 699 F.2d

1053 (11th Cir. 1983)).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process."  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th  Cir. 1988).

Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999);

_____

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

   (A)  the applicant has exhausted the remedies available in the courts of the State; or

      (B) (i)  there is an absence of available State corrective process; or

         (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

*Picard*, 404 U.S. at 277-78.  A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 562 U.S. at 102; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear

and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

DISCUSSION

Ground One          "The State Court Erred In Denying Petitioner's Claim That The State Presented Legally Insufficient Evidence Inconsistent With A Hypothesis Of Possession For Personal Use, Compelling Reduction Of The Conviction To Simple Possession Of Cocaine." (Doc. 1, p. 4).[5]

Petitioner claims the State presented only circumstantial evidence that he possessed the cocaine with the intent to sell it, and that such evidence was legally insufficient to support his conviction because it did not rebut the hypothesis that he possessed the cocaine for personal use as opposed to sale.  Petitioner asserts he presented this claim to the state courts in his motion for judgment of acquittal and on direct appeal, and that the state courts' rejection of his claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding and violated petitioner's Fifth and Fourteenth Amendment to the United States Constitution."  (Doc. 1, p. 5).

Respondent asserts petitioner's claim must be rejected without reaching the merits, because even if found to present a federal claim, petitioner procedurally defaulted the federal claim because in his motion for judgment of acquittal and on direct appeal, he presented his claim as a purely state law issue and failed to apprise the state courts of the federal constitutional nature of his claim.  (*Id*., pp. 10-19).  Respondent argues that if this court finds petitioner's federal claim to be properly exhausted, he still is not entitled to federal habeas relief because the state courts' rejection of the claim is consistent with clearly established federal law.  (*Id*., pp. 19-

---

[5]References to page numbers of the petition are to those enumerated by the electronic docket.

24).  Petitioner replies that regardless of respondent's procedural default defense, he "has established a constitutional due process claim."  (Doc. 20, pp. 3-4).

To the extent petitioner's claim can be liberally construed as raising a <u>federal constitutional</u> challenge to the sufficiency of the evidence (by petitioner's reference to due process and the Fifth and Fourteenth Amendments), the claim is unexhausted because petitioner did not present the federal constitutional nature of his claim to the state courts.

When petitioner challenged the trial court's denial of his motion for JOA on direct appeal, petitioner did not say, or even suggest, that his claim was a federal claim about due process.  (Ex. I, pp. 6, 7-).  Petitioner, who was represented by counsel, summarized his argument as follows:

> The circumstantial evidence was legally insufficient to prove intent to sell.  The officer testified that the amount of cocaine could have been for personal use.  In the absence of any other evidence tending to show Donson was a dealer, such as possession of paraphernalia or large amounts of cash, proof of this element rested wholly on evidence that the cocaine was packaged in individual half-gram baggies.  Individual packaging of small amounts alone does not demonstrate intent to sell.  Similar to <u>Valentin v. State</u>, 974 So. 2d 629 (Fla. 4th DCA 2008), in which the appellate court reduced a conviction to simple possession on evidence of possession of 17 baggies of powder cocaine weighing 8.3 grams, Donson's possession of 9 grams in 20 baggies could have been for personal use.  His conviction should be reduced to simple possession.

(Ex. I, p. 6).

Although Florida courts assess the sufficiency of the evidence under the reasonable doubt standard applied in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct.

2781, 61 L. Ed. 2d 560 (1979),[6] when a defendant claims there was a total failure of proof, here the basis of petitioner's argument on direct appeal was that the evidence of intent to sell failed under Florida's particularized circumstantial evidence standard. Petitioner articulated the relevant standard as follows:

> Evidence of intent to sell which is wholly circumstantial "may support a conviction only if [the evidence] excludes every reasonable hypothesis of innocence. The type of circumstantial evidence necessary to prove intent to sell includes the quantity and value of the contraband (which may be sufficient evidence standing alone if it is substantial), the presence of paraphernalia, and other suspicious circumstances or evidence that would indicate an intent to sell." Phillips v. State, 961 So. 2d 1137, 1138 (Fla. 2d DCA 2007) (internal quotes and citations omitted).

(Ex. I, p. 7); see also State v. Law, 559 So. 2d 187, 188 (Fla. 1989) ("A special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence. Where the only proof of guilt is circumstantial . . . a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." (citation omitted)). This is a higher standard of proof than the Jackson standard. See Bishop v. Kelso, 914 F.2d 1468, 1472-73 (11th Cir. 1990) (holding that Georgia's circumstantial evidence standard, which is identical to Florida's standard, is a higher standard of proof than the Jackson federal constitutional standard, and that the higher state standard has no place when considering the sufficiency of the evidence as a matter of federal constitutional law).

Petitioner's direct appeal brief cited exclusively to state law cases and all of his substantive arguments addressed the State's failure to meet Florida's circumstantial

---

[6]The standard under Jackson is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319, 99 S. Ct. at 2789 (emphasis in original).

evidence standard with regard to the element of intent to sell.  None of the state cases petitioner cited were decided on federal grounds.  Petitioner made no reference to the United States Constitution or federal law, and he cited no federal cases.  Nothing in petitioner's direct appeal argument would have alerted the state court to the presence of a federal claim about due process or the Fourteenth Amendment.  *See Baldwin v. Reese*, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004) ("[A] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").  Petitioner failed to exhaust his federal due process claim.  *See, e.g., Duncan*, 513 U.S. at 365-66 115 S. Ct. at 888 (holding that federal habeas petitioner failed to exhaust his claim that the state trial court's evidentiary ruling violated the Due Process Clause of the Fourteenth Amendment; petitioner's state law claim that the prejudicial effect of the evidence outweighed its probative value was only somewhat similar to, not the same as, petitioner's federal habeas claim that the evidence was so inflammatory as to prevent a fair trial); *Zeigler v. Crosby*, 345 F. 3d 1300, 1307 (11th Cir. 2003) (holding that federal habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the federal Constitution); *see also, e.g., Pearson v. Sec'y, Dep't of Corr*., 273 F. App'x 847, 850 (11th Cir. 2008)[7] (holding that

---

[7]The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent.  *See* 11th Cir. R. 36-2.

petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; "Although Florida courts assess the sufficiency of the evidence under the standard applied in *Jackson*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, the basis of Pearson's argument was that there was no evidence of reasonable fear on the part of the victim, as defined by state law.  Nothing in this argument would have alerted the state court to the presence of a federal claim about due process."); *Cook v. McNeil*, 266 F. App'x 843, 845-46 (11th Cir. 2008) (holding that petitioner did not alert the state court to the alleged federal nature of his insufficient evidence claim and therefore failed to exhaust his federal due process claim; petitioner's direct appeal brief cited exclusively to state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court."); *Harris v. Crews*, No. 3:11cv484-MCR-EMT, 2013 WL 3854520, at *7-*10 (N.D. Fla. July 25, 2013), *motion for certificate of appealability denied*, No. 13-13648-F (11th Cir. Feb. 5, 2014) (concluding that federal habeas petitioner's federal due process challenge to the sufficiency of the evidence was procedurally defaulted because the petitioner presented no federal due process claim to the state courts; on direct appeal, petitioner argued that the trial court erred when it denied his motion for judgment of acquittal because the evidence before the trial court was purely circumstantial and failed to eliminate all reasonable hypotheses of innocence).

Petitioner is barred by state procedural rules from returning to state court to exhaust the federal constitutional nature of his insufficient evidence claim.  *See* Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could

have or should have been raised at trial and, if properly preserved, on direct appeal

of the judgment and sentence."); *Rodriguez v. State*, 919 So. 2d 1252, 1262 n.7 (Fla.

2005) (holding that issues were procedurally barred because they should have been,

but were not, raised on direct appeal).  Petitioner's claim is considered procedurally

defaulted for purposes of federal habeas review.

Petitioner has made none of the requisite showings to excuse his default.

Petitioner's procedural default bars federal habeas review of Ground One.

| Ground Two | "The State Court Erred In Denying Petitioner's Claim that A Mistrial Was Warranted After An Officer Testified That He Asked Petitioner For Consent To Search, Which Implied A Refusal And Constituted An Impermissible Comment On Petitioner's Exercise Of His Fourth Amendment Rights." (Doc. 1, p. 6). |
|---|---|

Petitioner claims his rights under the Fourth Amendment were violated when

State's witness Officer Baker testified that he asked petitioner if he could search his

person.   Officer Baker did not testify to petitioner's response, because defense

counsel immediately requested a bench conference outside the presence of the jury.

Petitioner nonetheless contends that Baker's testimony improperly commented on

petitioner's right to refuse to consent to a search, and violated a pretrial ruling by a

predecessor judge prohibiting the State and its witnesses from commenting on

Baker's request to search petitioner and petitioner's refusal of consent.  Petitioner

asserts he presented this claim to the state courts in his motion for mistrial and on

direct appeal.  (Doc. 1, pp. 6-8).

Respondent asserts petitioner's claim must be rejected without reaching the

merits, because even if found to present a federal claim, petitioner procedurally

defaulted the federal claim by failing to raise it on direct appeal and instead

presenting the issue as one of purely state law.  (*Id*., pp. 24-29).  Respondent argues

that if this court finds petitioner's federal claim to be properly exhausted, he still is not entitled to federal habeas relief because the state courts' rejection of the claim is not contrary to, or an unreasonable application of, clearly established federal law. (*Id*., pp. 29-33).

      A.    Exhaustion and Procedural Default

      At trial, explaining how they came to encounter petitioner inside Ray's Soul City Lounge on June 24, 2009, the State's first witness, Pensacola Police Officer Pierce Baker, testified that he and Officer Fox went inside to "basically just scan the bar the whole area to see what kind of reaction we get with police presence." (Ex. C, pp. 84-86). Baker testified that he and Officer Fox were close to the pool table when they entered the bar and that Baker noticed petitioner was playing pool. (Ex. C, p. 86). Baker explained that while people would normally "stop what they are doing because we are in uniform[;] they see the police[;] what are we doing there and what we are going to do next[,]" what drew his attention to petitioner was that petitioner "completely ignored me had his head down." (Ex. C, p. 86). Deciding to make contact with petitioner, Officer Baker testified:

> Q [Prosecutor]: And what happened when you made contact with him?
>
> A [Officer Baker]: I asked him, you know, if I could talk to him asked him if I could search him, if he had anything on him.
>
>     [DEFENSE COUNSEL]:   Judge, again can we approach the bench. Actually we need to do this outside the hearing of the jury.
>
>     THE COURT:  Ladies and gentleman, retire to the jury room.
>
>     (Jury not present)

(Ex. C, p. 87).

Outside the jury's presence, defense counsel moved for a mistrial based on Officer Baker's testimony that he asked petitioner if he could search his person. (Ex. C, pp. 87-89). Defense counsel argued that Baker's testimony constituted improper comment on petitioner's exercise of his right to refuse consent to a warrantless search, and that a predecessor judge had previously ruled "that the State and the State witnesses could not make a comment about the search or the request to search and denial." (Ex. C, p. 88). Both the prosecutor and Officer Baker acknowledged that Baker's response was a mistake, but the prosecutor argued a mistrial was not warranted because "there has been no comment about his refusal." (Ex. C, pp. 88-89). In response to the court's suggestion that Officer Baker "should not testify that there was a refusal by the Defendant to search", defense counsel contended that in light of the jury having been excused upon his objection to Baker's comment, the jury would infer petitioner refused to consent to a search. (Ex. C, pp. 88-89). The trial court ruled:  "The officer has not answered the question so motion for mistrial is denied." (Ex. C, p. 89).

On direct appeal, petitioner raised as Issue II the trial court's denial of his motion for mistrial. (Ex. I, pp. 13-16).   Petitioner argued that Officer Baker gave testimony pointing to petitioner's exercise of his Fourth Amendment right to refuse to consent to a search; that the testimony created an impermissible inference of guilty knowledge from invocation of his constitutional right, and that a mistrial was necessary to ensure petitioner received a fair trial. (Ex. I, p. 14). Petitioner relied on state law cases, primarily *Gomez v. State*, 572 So. 2d 952 (Fla. 5th DCA 1991), which held:

> Comment on a defendant's denial of permission to search a vehicle, although not exactly the same thing as comment on a defendant's right to remain silent, since the Fourth Amendment is

involved rather than the Fifth,[FN 2] constitutes constitutional error of the same magnitude.[FN 3]  A defendant who has a constitutional right to refuse to consent to a search . . . should be free to exercise that right with impunity.  No comment on its exercise should be permitted to raise an inference of guilty, if the Fourth Amendment right against unreasonable search and seizure is to be given its full meaning.[FN 4]

[FN 2:  U.S. Const. Amend. V.]

[FN 3:  *See Padgett v. State*, 590 P. 2d 432 (Alaska 1979); *Bargas v. State*, 489 P. 2d 130 (Alaska 1971); *People v. Turner*, 730 P. 2d 333 (Colo. App. 1986); *People v. Stephens*, 133 Mich. App. 294, 349 N.W. 2d 162 (Mich. App. 1984).]

[FN 4:  *See also United States v. Thame*, 846 F.2d 200 (3d Cir.), *cert. denied*, 488 U.S. 928, 109 S. Ct. 314, 102 L. Ed. 2d 333 (1988) (improper comment in prosecutor's closing argument); *United States v. Taxe*, 540 F.2d 961 (9th Cir. 1976), *cert. denied*, 429 U.S. 1040, 97 S. Ct. 737, 50 L. Ed. 2d 751 (1977) (improper prosecutor comment).]

*Gomez*, 572 So. 2d at 953.  The court in *Gomez* held further that commenting on a defendant's remaining silent or refusing to give consent to a search can be harmless error, and that the burden is on the State "to establish beyond a reasonable doubt that the error did not contribute to the guilty verdict, or that there was no reasonable possibility that the error contributed to the conviction."  *Id*. at 953. The *Gomez* decision clearly rested on federal constitutional grounds.  Petitioner's direct appeal argument concluded with the statement that "the improper implication that Donson declined consent to search vitiated the fairness of the trial and undermined the reliability of the guilty verdict."  (Ex. I, p. 16).

Respondent argues petitioner's failure to expressly allege a denial of due process under the United States Constitution and his reliance on "a state abuse of discretion standard of review" would not have alerted the state courts to the presence

of a federal constitutional claim.   (Doc. 12, p. 28).   Thus, respondent argues, petitioner's federal constitutional claim is unexhausted and procedurally defaulted.

A reasonable reader would understand that the particular legal basis of petitioner's claim was his Fourth Amendment right to refuse to consent to a warrantless search, and his federal constitutional right to a fair trial.   The State understood petitioner's claim as one of federal constitutional dimension.   (Ex. J, p. 6 (characterizing petitioner's claim as one of constitutional error involving petitioner's right under the Fourth Amendment to refuse to consent to a warrantless search)).   Taken  together, petitioner's references to his federal constitutional rights and his discussion of *Gomez*, which rested on federal constitutional principles and cited federal cases, did more than "scatter some makeshift needles in the haystack of the state court record.   *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005) (internal quotation marks omitted).   Petitioner sufficiently presented the federal constitutional nature of his claim to the state courts so as to satisfy § 2254(b)'s exhaustion requirement.

B.      Federal Review of State Court Decision

Although petitioner properly exhausted this claim, petitioner is still barred from obtaining federal habeas relief, because the Supreme Court has not spoken on the issue.   This habeas court's inquiry is limited to whether the state courts' rejection of petitioner's claim was contrary to, or involved an unreasonable application of, a holding of the Supreme Court.   The Supreme Court has never held that it is a violation of the Fourth Amendment for the government (or a government witness) to comment at trial on a defendant's refusal to consent to a warrantless search.   *See Leavitt v. Arave*, 383 F.3d 809, 828 n.15 (9th Cir. 2004) (stating that although decisions of the Ninth Circuit have indicated that, taken by themselves, comments on the exercise of one's Fourth Amendment rights are improper, "[w]hether the Supreme

Court has directed that conclusion is another matter.  It has alluded to it and has hinted that it might so hold.  *See Schmerber v. California*, 384 U.S. 757, 765 n.9, 86 S. Ct. 1826, 1833 n. 9 16 L. Ed. 2d 908 (1966).  But to say that the Court has directed that result for habeas corpus purposes is problematic.”); *see also, e.g., United States v. Rios*, 443 F. App’x 433, 439 and n.2 (11th Cir. 2011) (“We have no case law that squarely answers the question before us – whether it is a violation of the Fourth or Fifth Amendments for the government to comment at trial on a defendant’s refusal to consent to a warrantless search”; noting that there is a circuit split on the issue).  Similarly, no Supreme Court precedent establishes that a witness’ comment of the type made here by Officer Baker renders a trial “fundamentally unfair” in violation of the Due Process Clause.

Because no Supreme Court case gives a clear answer to whether the type of comment made by Officer Baker rendered petitioner’s trial fundamentally unfair, “it cannot be said that the state court unreasonably applied clearly established Federal law.”  *Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) (brackets and internal quotation marks omitted); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933, 1942, 167 L. Ed. 2d 836 (2007) (holding that the Arizona Supreme Court did not unreasonably apply federal law because “we have never addressed a situation like this.”); *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 654, 166 L. Ed. 2d 482 (2006) (“Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators’ courtroom conduct of the kind involved here,” the denial of relief by the California Court of Appeal “was not contrary to or an unreasonable application of clearly established federal law.”); *Burton v. Comm’r, Ala. Dep’t of Corr.*, 700 F.3d 1266, 1269 (11th Cir. 2012) (holding that the absence of clearly established federal law barred petitioner from obtaining relief under § 2254(d)(1) on his claim that the state court unreasonably

applied federal law when it determined that the decision to call witnesses ultimately rests with the client rather than with counsel, so that there was no interference with the attorney-client relationship when the trial court honored the defendant's wishes to call certain mitigation witnesses during penalty phase of his capital murder trial); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) (holding that state court cannot unreasonably apply federal law if there is no Supreme Court precedent on point).

The state courts' rejection of petitioner's constitutional claim was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the Supreme Court. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three    "<u>The State Court Erred In Finding That Trial Counsel Was Not Ineffective For Failing To File A Motion To Suppress Evidence Obtained Due To An Illegal Seizure In Violation Of Petitioner's Fourth Constitutional Amendment.</u>" (Doc. 1, p. 8).

Petitioner claims counsel was ineffective for failing to move to suppress the drug evidence (baggies of cocaine) seized by police. (Doc. 1, pp. 8-9). Petitioner asserts he exhausted this claim by presenting it to the state courts as Ground 5 of his Rule 3.850 motion. (Doc. 1, p. 9). Respondent asserts that although it appears petitioner satisfied the exhaustion requirement (doc. 12, p. 34, p. 37 and n.10), he is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim is consistent with the clearly established federal law, and was based on a reasonable determination of the facts. (Doc. 12, pp. 37-42).

    A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims.

The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner. *Id.*, 466 U.S. at 687. "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness. Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland* at 690, 104 S. Ct. at 2066. "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* at 694, 104 S. Ct. at 2068. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

"To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) (*citing Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83, 91 L. Ed. 2d 305 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious. . . .")).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* (citations omitted).

B.     Federal Review of State Court Decision

The state circuit court denied relief in a written order.  (Ex. O).  The order

provided, in relevant part, as follows:

<u>Background</u>

After a trial by jury, the Defendant was convicted of possession
of cocaine with intent to sell, manufacture or deliver.  <u>Attachment 1</u>.
The testimony at trial was that officer Baker noticed the Defendant
playing pool in a local bar.  <u>Attachment 2,</u> at page 86.  Officer Baker
testified that, "normally, when we walk in there people stop what they
are doing because we are in uniform. . . ." <u>Id.</u>  The Defendant, however,
"completely ignored me had his head down." <u>Id.</u>  This prompted Officer
Baker to "make contact with him to see if he would talk with me." <u>Id.</u>,
at pages 86-87.  Officer Baker asked the Defendant "if I could see [his]
ID." <u>Id.</u>, at page 91.  The Defendant said "yes." <u>Id.</u>  As Officer Baker
was going outside to check his computer, he asked Officer Fox to
"watch" the Defendant.  <u>Id.</u>, at page 91.

Officer Fox testified that Officer Baker "motioned to me to keep
an eye on [the Defendant]."  <u>Attachment 2</u>, at page 107.  Officer Fox
watched the Defendant "walk around the pool table a couple of times
and then he walked past me, directly past me." <u>Id.</u>  He followed the
Defendant.  Officer Fox was "within a matter of a foot, a foot and a half
behind him" when he saw the Defendant "reach into his right pants
pocket, pull out something plastic in nature." <u>Id.</u>, at page 108.  He saw
the Defendant "step to the left and lean towards his left and toss the bag
into the towel basket." <u>Id.</u>  Officer Fox looked in the towel basket and
observed "a baggie of powder cocaine there."  <u>Attachment 2</u>, at page
110; <u>see also</u> <u>Attachment 4</u> (excerpts from Officer Fox's deposition).
Officer Fox arrested the Defendant.  <u>Id.</u>

. . . .

<u>Ground Five</u>

In this claim, the Defendant contends that his counsel was ineffective for failing to file a motion to suppress the cocaine seized by the police.  <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). This claim is without merit.  According to the Defendant's sworn motion for post-conviction relief, the Defendant alleges the following:

> Officer Baker contact in the club, defendant was playing pool and didn't look up from playing which prom[p]ted the officer to ask defendant if he could search him and asked if he had anything on him.  Officer Baker then requested defendant's ID which he presented.  Officer Baker took the ID out to his patrol car to check for warrants and told the other officer, Officer Fox to watch defendant.  Officer Fox followed Defendant to an employee area where he allegedly saw the defendant toss a plastic bag containing cocaine into a towel basket.

Therefore, it is clear even from the Defendant's own allegations that the evidence was recovered from a towel basket and that the State's contention was that the Defendant abandoned the cocaine.  "Although warrantless searches and seizures are generally prohibited by the Fourth Amendment to the Untied States Constitution and article I, section 12 of the Florida Constitution, police may conduct a search without a warrant if consent is given *or if the individual has abandoned his or her interest in the property in question*."  <u>Peterka v. State</u>, 890 So. 2d 219, 243 (Fla. 2004) (emphasis added).

The evidence would only be subject to suppression if the Defendant could show that his abandonment of the cocaine was the product of an illegal stop. "While it is true that a criminal defendant's voluntary abandonment of evidence can remove the taint of an illegal stop or arrest, it is equally true that for this to occur the abandonment must be truly voluntary and not merely the product of police misconduct." <u>State v. Anderson</u>, 591 So. 2d 611, 613 (Fla. 1992), <u>citing</u> <u>United States v. Beck</u>, 602 F.2d 726, 729-30 (5th Cir. 1979).

The Defendant argues that he was "detained" because one of the police officers was "watching and following [his] every move" while the other "took his ID outside the back to his police cruiser to check his computer for warrants."  See Defendant's Memorandum of Law, at pages 6-7; 11.  However, as the Fifth District Court of Appeal has explained:

> When officers have no basis for suspecting a particular individual, they may generally ask questions of that individual and ask to examine the individual's identification. See Florida v. Bostick, 501 U.S 429, 111 S. Ct. 2382, 115 L.Ed.2d 389 (1991).  In Golphin v. State, 838 So. 2d 705 (Fla. 5th DCA 2003), we held that a person is not seized when the person's license is kept by police for a few minutes to make a warrants check, because the person would be free to withdraw his consent at any time by, for example, asking that his license immediately be returned, and the refusal to comply by police would certainly amount to a detention.  Id.

Holden v. State, 877 So. 2d 800, 802 (Fla. 5th DCA 2004).

In support of his claim, the Defendant relies on Brye v. State, 927 So. 2d 78 (Fla. 1st DCA 2006).  However, that case is distinguishable.  In Brye, the First District Court of Appeal held that "[b]ecause the deputy continued to retain Appellant's I.D. card after the warrant check came back clean, and then asked for permission to conduct a personal search, the detention was unlawful."  Brye v. State, 927 So. 2d 78, 83 (Fla. 1st DCA 2006).  In this case, Officer Baker testified that he was outside only a "matter of minutes." Attachment 2, at page 91.  When he returned, the Defendant had already been arrested due to the cocaine discovered in the towel  basket.  Id.  Unlike Brye, police did not improperly keep the Defendant's identification for a period of time longer than necessary to run a warrants check.

Furthermore, a person is not "detained" merely because law enforcement officers monitor the person in a public place.  "A person is 'seized' only when, by means of physical force or a show of authority,

his freedom of movement is restrained." <u>United State v. Mendenhall</u>, 466 U.S. 544, 553 (1980).  Officer Fox'[s] observations did not restrain the Defendant's freedom of movement.  <u>Katz v. United States</u>, 389 U.S. 347, 351 (1967) ("What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection.").

It was established at trial that the Defendant was a customer of the bar.  <u>Attachment 2</u>, at pages 107; 159.  Therefore, he would not have a reasonable expectation of privacy in any part of the bar.  <u>State v. Washington</u>, 884 So. 2d 97, 98 (Fla. 2d DCA 2004) ("[t]o successfully claim the protection afforded by the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched and that this expectation is reasonable.").  In areas of the bar open to the public, the Defendant had no reasonable expectation of privacy because any member of the public could witness what was occurring.  In areas of the bar not open to the public, the Defendant, as a patron of the bar, had no reasonable expectation of privacy in such areas.  Defendant's claim of ineffective assistance of counsel is without merit.

(Ex. O, pp. 51-53) (footnotes omitted).  The First DCA affirmed in a written opinion, without discussion of this particular claim.  (Ex. S).

Petitioner asserts in his reply that "the trial court never addressed [this claim] on the merits.  Therefore the state is not entitled to due deference, it made no legal conclusions."  (Doc. 20, p. 6).  This assertion is without merit and conclusively refuted by the record.  As set forth above, the state circuit court's written order addressed petitioner's claim on the merits <u>in detail</u>, providing factual determinations and legal conclusions.  The First DCA affirmed the denial of postconviction relief in an opinion that addressed one, but not all of petitioner's claims.   In these circumstances, this court must presume that petitioner's claim was adjudicated on the merits.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law

procedural principles to the contrary."); *Johnson v. Williams*, — U.S. —, 133 S. Ct. 1088, 1096, 185 L. Ed. 2d 105 (2013) (extending the rationale of *Richter* and holding that when a federal claim has been presented to the state court and the state court opinion addresses some but not all of the defendant's claims, a rebuttable presumption arises on federal habeas review that the state court adjudicated the federal claim on the merits).  The state courts' rejection of petitioner's claim is entitled to deference under the AEDPA.

The state court's findings of fact are amply supported by the record and are presumed correct.  Petitioner has not presented clear and convincing evidence rebutting this presumption of correctness, nor has petitioner shown that any factual finding is unreasonable.  Based on the facts surrounding the seizure of the cocaine, the state court concluded, reasonably, that petitioner failed to establish deficient performance and prejudice under *Strickland*, because petitioner's proposed Fourth Amendment claim had no merit.  *See Florida v. Bostick*, 501 U.S. at 434-35 (holding that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in a public place, asking him questions, asking to examine his identification, and requesting consent to search his belongings, as long as the police do not convey a message that compliance with their requests is required); *United States v. Mendenhall*, 466 U.S. at 554 (holding that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"); *id*. at 555 (holding that no "seizure" of the defendant occurred, where agents wore no uniforms and displayed no weapons, did not summon defendant to their presence but instead approached her and identified themselves as federal agents and requested, but did not demand, to see defendant's identification and airline ticket, where events took place in public concourse at airport, and where

nothing suggested that defendant had any objective reason to believe she was not free to end conversation and proceed on her way); *Texas v. Brown*, 460 U.S. 730, 748, 103 S. Ct. 1535, 1546, 75 L. Ed. 2d 502 (1983) ("[I]f an item has been abandoned, neither Fourth Amendment interest [the interest in retaining possession of property or the interest in maintaining personal privacy] is implicated, and neither probable cause nor a warrant is necessary to justify seizure."); *Abel v. United States*, 362 U.S. 217, 241, 80 S. Ct. 683, 698, 4 L. Ed. 2d 668 (1960) (holding that Fourth Amendment was not violated by law enforcement's seizure of items from wastepaper basket in defendant's hotel room after defendant put the items in the basket, paid his bill and vacated the room).

Not only has petitioner failed to show his counsel was objectively unreasonable in failing to file a motion to suppress on petitioner's proffered basis, petitioner has also failed to show there is a reasonable probability the motion would have been successful. The state courts' rejection of petitioner's ineffective assistance claim was wholly consistent with *Strickland*. *See, e.g., Freeman v. Attorney Gen. Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Brownlee v. Haley*, 306 F.3d 1043, 1066-67 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Three.

Ground Four          "The State Court Erred In Finding That The Provisions of Chapter 893, Florida Statutes (2010), The Florida Comprehensive Drug Abuse Prevention And Control Act, That Provide That Knowledge Of The Illicit Nature Of A Controlled Substance Is Not An Element Of Any Offenses Under The Chapter But Rather The Lack Of Such Knowledge Is An Affirmative Defense, Is Not Unconstitutional."  (Doc. 1, p. 9).

Petitioner claims that the statute under which he was convicted, Florida Statute § 893.13, is unconstitutional on its face because it allows an individual to be convicted absent any proof of *mens rea*, in violation of the Fourteenth Amendment. (Doc. 1, pp. 9-10).  Petitioner asserts he exhausted this claim by presenting it to the state courts as Ground 6 of his Rule 3.850 motion.  (*Id*., p. 10).  Respondent asserts that although it appears petitioner satisfied the exhaustion requirement (doc. 12, pp. 42-43 and n. 11), he is not entitled to federal habeas relief, because the state courts' rejection of petitioner's claim is not contrary to and does not involve an unreasonable application of clearly established federal law.  (Doc. 12, pp. 43-44).

The state circuit court denied relief in a written order, explaining:

> In his final claim, the Defendant challenges the constitutionality of the statute he was convicted of violating, section 893.13, Florida Statutes.  This argument has been rejected by the First District Court of Appeal.  Harris v. State, 932 So. 2d 551 (Fla. 1st DCA 2006); Flagg v. State, 74 So. 3d 138 (Fla. 1st DCA 2011).  The Defendant is not entitled to relief on this claim.

(Ex. O, p. 53).   The First DCA affirmed, as follows:

> The appellant has filed a rule 3.850 motion raising six claims.  We affirm the lower court's denial of all of the claims, including claim six, in which the appellant argues that section 893.13, Florida Statutes, is unconstitutional pursuant to *Shelton v. Secretary, Department of Corrections*, 820 F. Supp. 2d 1289 (M.D. Fla. 2011).  *See State v. Adkins*, 96 So. 3d 412 (Fla. 2012).

*Donson v. State*, 99 So. 3d 999 (Fla. 1st DCA 2012) (copy at Ex. S).

The state courts' rejection of petitioner's due process challenge to Florida Statute § 893.13 is not contrary to and does not involve an unreasonable application of clearly established Supreme Court precedent. *See Shelton v. Sec'y, Dep't of Corr.*, 691 F. 3d 1348 (11th Cir. 2012) (*Shelton II*) (reversing district court's opinion in *Shelton v. Sec'y, Dep't of Corr.*, 802 F. Supp. 2d 1289 (M.D. Fla. 2011), and holding that state courts' rejection of identical challenge to constitutionality of Fla. Stat. § 893.13 was not contrary to and did not involve an unreasonable application of clearly established federal law; concluding that "nothing in the *U.S. Reports* decides or implies resolution of the novel issue of the Florida Act's constitutionality, and we cannot find Florida's adjudication to be unreasonable under AEDPA."); *see also State v. Adkins*, 96 So. 3d 412 (Fla. 2012) (holding that chapter 893, Florida Statutes, is not facially unconstitutional and does not violate due process because the statutes do not punish essentially innocent conduct; there is no constitutional right to possess controlled substances or to be ignorant of the nature of the property in one's possession, and any concern about punishing innocent conduct is obviated by allowing a defendant to raise the affirmative defense of absence of knowledge).

Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Julie L. Jones has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Anthony Jerome Donson*, Escambia County, Florida, Circuit Court Case Number 09-CF-2930, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 2nd day of March, 2015.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).